12 11 15 22 A I would like to reserve five minutes of my time for rebuttal. All right. Bear with me. I'm a little nervous this morning. The first time in several years I've been up here. It's all right. Don't be nervous in this matter. Got a real easy panel this morning. I appreciate that. It might not be ever too easy for me though. That's a problem. In this matter, Your Honor, please, Senator Parlier was convicted of conspiracy to manufacture methamphetamine. We have raised several issues, one regarding venue, one regarding the testimony of some prior bad acts or prior crimes. The one I wanted to talk about this morning is the detective Anderson was a detective with the Watauga County Sheriff's Office. He testified as an expert and as a lay witness, a fact witness. For several pages of his testimony, he talked about issues that had no relevance in this case that were highly prejudicial and highly inflammatory. There was meth manufacturing alleged in the indictment, right? Yes, Your Honor. I know this was a bit colorful, the testimony, but why isn't this fair background to just tell the jury? Most people don't know that a meth house could blow up. Why isn't this just relevant background testimony? Well, again, how is that relevant to whether or not she's guilty of being engaged in a conspiracy, Your Honor? They ought to be able to understand what she's charged with. Well, I think understanding what she's charged with, manufacturing methamphetamine, is one thing, but comparing her to a mass murderer, Timothy McVeigh, is quite another. But this, I mean, this was not objected to, right? It makes it kind of tough for you. It was not, Your Honor. I did not try the case. I came on it sentencing and appeal. I can guarantee you, had I been trying the case, we would not be here talking about plain error. But the case, two cases we cited in our brief, and I want to do one little bit of housekeeping here. We cited the case of United States v. Anderson, page 6 of our reply brief. That citation should be 584, Fed 2nd 849, instead of 548. It kind of scared me when I was reviewing my brief yesterday and I couldn't find that case. But at any rate, the situation we have here is almost exactly on point with each of these cases, Green and Anderson. In fact, the testimony in this case is more egregious than those. United States v. Green, it was a conviction for manufacturing DMT. The expert got on and testified not only about the precursor drugs that were involved in that case, but talked about the relationship to LSD, talked about its bizarre physiological effects on the body and that sort of thing. In Anderson, the court held, in Anderson it was also talked about the use of marijuana, cocaine, and silent and allotted, referred to drug scene and street scene. Talked about marijuana causing a person going berserk or running amok and paranoid. And talked about how it made them sleepy, apathetic, lethargic, and disinterested in what's going on. In that case, in Anderson, the court held that that was plain error. It violated the In that case, Anderson actually admitted to drug dealing. In the Green case, they had surveillance on the defendants. They served a search warrant on his house where they found the precursors. I guess my point in that is that the level of proof in those cases was at least as strong, if not stronger, than in this case. But again, the court in Anderson held that this was plain error. One thing in Anderson, they said they didn't consider the sufficiency of the objections made by defense counsel because it was such an egregious violation, it violated their Fifth Amendment right to due process. The court in Green called this sort of testimony of dubious relevance and prejudicial impact and said in that case, the judge should have corrected it on his own semi-spontane. So I think that what we have here is a situation exactly like we had in Green versus Anderson. Patrick Anderson talked about how the atmosphere in a methamphetamine lab can be extremely volatile. Talked about toxic fumes that were present, how a spark from a light switch could ignite fumes and the whole room can go up. A simple breath can kill you if you go in and catch a whiff. They say you can be dead before you hit the ground. He talked about ammonium nitrate used in the shake and bake method. He said that ammonium nitrate used in this method is weapons grade and it's the same stuff that Timothy McVeigh used in Oklahoma City back in the 90's. This is the first witness that was presented to the jury. This is the first thing they heard out of the box how dangerous this methamphetamine manufacturing is. Which has absolutely no relevance under the rulings in Green and Anderson to the issues before the jury. That's pretty much true though. I mean granted the McVeigh stuff wasn't so great, but it is extremely dangerous. Well it is, but how is that relevant to whether or not this young lady is involved in a conspiracy for being irrelevant to the manufacturing, to the offensive manufacturing? Parties are allowed to put in background evidence about what's going on. I mean, the jury wants to understand what is this that's being charged, not just do these two agree to do something wrong. I understand, but what the trial court is required to do is to weigh the probative value against the prejudicial effect. And in this case, the probative value was nil for one thing. His name is Ms. Parler's boyfriend testified that he was the cook. He was the one doing all the cooking. He testified that he used only the red phosphorus method. All of this detail about the dangerousness of methamphetamine manufacturing, how one simple breath can kill you, how it's like being a Timothy McVeigh related to the shake and bake method, which was not even at issue in this case. How can you demonstrate prejudice in view of the testimony against your client, including her confession? Well, and the rulings in Anderson and Green, Your Honor, make that consideration nil. As in Anderson, the court said it's a Fifth Amendment due process violation. They didn't even talk about the strength of the evidence, which is pretty strong in that case. Unlike in this case. I mean, sort of like in this case. There's pretty strong evidence in this matter. Well, I mean, this isn't structural error. We are going to do a harmless, you know, substantial rights analysis if we thought there was a problem with the admission of this. Yeah, and actually in Green, Your Honor, please, this court affirmed the trial judge's denial of a Rule 29 motion, Motion for a Judgment of Equality of the Proof. They said the evidence was plenty sufficient there to support the conviction, but that this testimony that was so prejudicial and so egregious that that didn't matter in order to preserve the integrity of the trial process and to preserve this defendant's Fifth Amendment rights. That the testimony they introduced there, which is not nearly as egregious as what came in in this trial, they said in that case that that required reversal, regardless of the level of the proof. And Anderson and Green both basically held those matters. With regard to the other issues, I'll just leave those to what we raised in the brief and I'll reserve the rest of my time for rebuttal. May it please the Court. My name is Luke McLaurin and I'm here on behalf of the United States. I'm just going to focus on this 403 prejudicial impact issue and if the I was not the trial attorney in this case. I'm just always surprised why you invite appeals. You didn't need to put in all that garbage, did you? Well, I think if you look very carefully at the record, what you see that's happening is the questions of the trial attorney were actually somewhat narrowly tailored to try and get at the manufacturing process, which is very relevant in this case because the defendant was charged with being part of a conspiracy to manufacture methamphetamine. Her role in the conspiracy was to purchase pseudoephedrine. Now, the average juror, we hope, does not know how you manufacture a methamphetamine. So they needed an expert to come and tell them about the various processes. And the reason why the details of those processes were important is because she was also charged with the conspiracy having involved 50 grams of methamphetamine. And the only evidence of her direct involvement had to do with these purchases of pseudoephedrine. So you needed to have an expert to come in so the jury could understand that by purchasing this quantity of pseudoephedrine, that was going to lead to a certain quantity of methamphetamine. So if you look at the, to answer your question Judge Norris, if you look at the questions that were actually asked by the trial AUSA in this case, they were really designed to get out information just about the manufacturing process. A lot of this... ...the witness a little bit, not to run on about Timothy McVeigh. I think if you look at the questioning, it looks like the prosecutor was trying to sort of redirect the witness when she could. But of course, this is exactly why these issues should have been objected to at trial. That was the time at which the defendant should have objected and said, hey, don't talk about this stuff. And then the judge, the prosecutor could have proceeded appropriately. So the question here is, given that failure to object, did this result in essentially an unfair trial? And the answer to that is no. Because this evidence wasn't unduly prejudicial. It may have been prejudicial. But again, the language of Rule 403 is undue prejudice. Evidence concerning the manufacturing process was certainly relevant. And also the dangerousness of the manufacturing process was relevant. If you look at the full facts of what happened in this conspiracy, the defendant was living with the lead manufacturer of meth. And he was doing this in a garage in the back of their house. And then part of her claim at trial was, well, look, I didn't really know anything about what was going on. I never saw him manufacturing meth. And the fact that the process was so dangerous that he might have done it very far away from the house where they lived, that's certainly relevant to show why she might not have actually seen the meth being manufactured. Why she might not have actually gone to the meth lab that Tommy Ward was operating. So I think all of that is really relevant. And when you balance it out, I don't see how this is a situation where this prejudice is unfair or undue prejudice. This is a very different situation than the court confronted in Anderson and Green. Let me ask you a question about a different issue. Why was this case brought in Tennessee rather than North Carolina? I can't answer the specific question as to the Well, I guess, why was it proper that it was brought, in your view, brought in Tennessee rather than North Carolina? Because several overt acts and furtherance of the conspiracy were conducted in Tennessee. Why do you think it's one conspiracy? I mean, I'm struggling to see any connection, any common goal, as opposed to parallel similar activity between Tommy Ward and Charles Parlier. Well, the investigation revealed, and I believe the reason why it was charged in eastern Tennessee, is that you had a group of folks who were together buying pseudofedrin, and you had a couple different meth cooks that were all part of this same group of people, and they were all acting as one conspiracy. Some of those folks were in Tennessee in some way. What's the evidence that connects, other than Parlier buying pseudo-whatever-it-is, what's the evidence that connects Charles and Tommy Ward? That they actually cared about how they're each doing, respectively, in their meth sales? I'm not sure that there's any evidence specifically in the record connecting Tommy Ward and Charles Parlier, but there is evidence connecting Charles Parlier with Jackie Roten and James Trevett, who were additional co-conspirators here. And in fact, Jackie Roten and James Trevett both testified that they went with the defendant to help transport pseudofedrin to Charles Parlier. And I think the jury could reasonably infer from that that what you have here is a whole group of people with a couple different methamphetamine cooks, but a whole group of people who are all engaged in the same process together. And again, the standard on that question of whether there's been a variance from the indictment is is two conspiracies the only way this evidence could be viewed? And if it's possible to view this evidence as involving one conspiracy, then I think that you have to defer the jury's verdict in this case. And we would submit that given the fact that these other two co-conspirators testified that they were also involved with Charles Parlier, that the jury could reasonably infer from that that this whole group was operating in a way that you had a couple different methamphetamine cooks. One was in North Carolina, one was in Tennessee, and you had a bunch of folks who were purchasing pseudofedrin to feed the cooks and get methamphetamine in return. Could the evidence have been viewed differently by the jury? Possibly. But given the posture of this case, the court, I think, should defer to the way in which the jury did view this evidence. I will say the evidence connecting Charles' activities with Tommy's is quite thin. And I mean, just for what it's worth, this is the maybe fourth case literally in the last six months where I can make the same comment about conspiracies. Broad is one conspiracy, and it's, boy, it's a stretch to say it is one. And I appreciate your concern, Judge Kethledge. Unfortunately, there is investigative information that, of course, is not part of the record, and it would be improper for me to rely on it. But if you're going to charge it as one, you might want to consider having some more evidence than we're seeing lately to that effect. I appreciate that. I mean, it's just, you know, it's presenting us with a question we have to think pretty hard about, I think, in this case. Well, I think in this case what you do have is you have evidence of co-conspirator, you have evidence of the defendant and at least other co-conspirators who are all part of this organization all connected to Charles Parlier. That they were, they testified, look, our MO was to go buy pseudoephedrine and then we would bring it to the cooks. Sometimes they brought it to Tommy Ward. On other occasions, they brought it to Charles Parlier. I think, given that evidence, a reasonable jury could infer that this was all one big conspiracy with different meth cooks. I mean, there are reasons, I mean, the folks who are involved in this conspiracy at the low level who are purchasing pseudoephedrine, a lot of times they're mainly doing it so that they can get meth in return. So, you know, from their perspective, you know, they don't view this as just sort of, hey, it's a one cook operation. You know, if there are other folks who can help, you know, continue this process of them getting meth and being able to distribute meth, they're happy with that. And I think that what you see is at least three co-conspirators together who are both connected to Tommy Ward and to Charles Parlier. And I think that that is enough under the law to show that this was one conspiracy as opposed to multiple conspiracies. Okay. Thanks. What about the out-of-court statement, the confrontation clause argument? Are we to conclude that the out-of-court statement only implicates Mr. Ward and that's why we don't have a confrontation clause problem? Well, I think if you actually look very carefully at the record, the better way to analyze that would be that the out-of-court statement, it did address both Mr. Ward and the defendant. I mean, I think that's clear from the context in the record. It's also, I would think, seems pretty clear that the statement was in fact testimonial. The question is whether it was offered for the truth of the matter asserted. And if you actually look at the context in which the statement was elicited and which it was presented, it wasn't presented for the truth of the matter asserted. It was simply presented as a context of why did you start your investigation? And I think also given the posture of this case, even if the court were to find that that was an erroneous admission, you still have to look at all of the evidence in this case to see whether it meets the other requirements of plain error, whether this error, if it was an error, had any effect on the verdict. And I think given the plethora of evidence against the defendant, I mean, you had Tommy Ward, Jackie Roden, Timothy Miller, James Trevett, four co-conspirators all testifying that yes, the defendant went, she bought pseudoephedrine, she brought it to Tommy Ward, she brought it to Charles Parlier knowing that that person would manufacture meth, got meth in return, and then you also have the defendant's own admission. So I think when you look at the overwhelming evidence in this case of the defendant's guilt, any potential error in the admission of that statement, even assuming it was offered for the truth of the matter asserted, would be a harmless error in this case. Does that answer your concern, Judge Clay? That's fine. Returning just briefly to this prejudice argument, I just want to point out that this case is in fact very distinguishable from Anderson and Green, the two cases relied upon by the defendant. Those cases involved testimony where the testimony was about the effect of the drug and the dangers that that drug posed to society. This is different. The testimony here was not focused on trying to say, you know, marijuana is a bad thing and people who use marijuana are evil people. This testimony was about how do you manufacture meth. And this testimony was relevant. Unlike testimony about the evils of drugs, which is not really relevant in a prosecution for drug conspiracy, the testimony about how you manufacture meth is relevant in a prosecution for meth conspiracy when the theory is that this person was providing pseudoephedrine to help in the manufacturing process. The juror needs to understand how does pseudoephedrine factor into this process? How much meth can be produced from pseudoephedrine as a result of the meth manufacturing process? And I think that that was all relevant information in this case. And any prejudice that might have occurred as a result of Detective Anderson's testimony was not undue prejudice. And in light of the overwhelming evidence of the defendant's guilt, was certainly not, this is not the kind of situation where the defendant didn't receive a fair trial and where this court should not have confidence in the jury's verdict. Unless there are any other questions about this issue or any of the other issues in the case, I'll rest on our briefs. All right. Thank you very much, Mr. McLaurin. Yes, Your Honor. Just briefly, you know, not only did the government bring this evidence out in their case in chief, but they doubled down on it in the final argument. Prosecutor says, what's the harm, you might think, what's the harm if Tommy Ward is manufacturing methamphetamine, he's giving it to users, he's not selling it on the street, we're not, you know, entrapping other people. What are the dangers associated with methamphetamine? Well, you heard Detective Anderson talk about it, why they all get suited up when they go to a meth lab because of the chemicals, because of the spark, the chance of a fire breaking out, because meth itself is a bad drug. She hammered on that in her final argument. So not only did they bring it in, but they doubled down in the final argument and brought it out there also. The other issue is, it's one thing to say that using the red phosphorus method of manufacturing methamphetamine, that the matches provide the phosphorus, that's why it's important that people were pulling matches, that pseudoephedrine is a necessary ingredient, that's why these people were out buying pseudoephedrine. It's another thing entirely to talk about the shake and bake method using ammonium nitrate that's so dangerous, it's what Timothy McVeigh used to blow up the Murrah building in Oklahoma and kill hundreds of people. That had nothing absolutely to do with the proof in this case. The proof in this case, Tommy Lord said, I only did red phosphorus, I didn't do shake and bake. Why did they bring that shake and bake evidence in about the dangerousness of that method and then argue about it in the final argument? That's not a necessary part of this proof. I thought, Judge Norris, did you have a question? I don't mean to run a horn, but with regard to Judge Kethledge, with regard to the venue argument, one thing is uncontroverted in the record. Senator Parlier had ended her relationship with Tommy Lord at least one year and maybe two or three years before Charles Parlier ever came into the picture. And that's, again, I said that's uncontradicted. I think as we stated in our brief, the proof is actually of multiple conspiracies and I'll confess that when I first came into this case prior to sentencing and I read the transcript and looked through the records, I myself was wondering why in the world or how in the world did this thing get prosecuted in the Eastern District of Tennessee? It occurred almost totally within North Carolina. Thank you. Thank you. The case is submitted.